CASSIDY CASE.

Penobscot.      Opinion, June 21, 1935.

436

*Edgar M. Simpson,* for appellants.
*William S. Cole,* for City of Bangor.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.
DUNN, J. Dissenting.

BARNES, J. By regular statutory proceedings the city of Bangor took a parcel of land, with buildings thereon, for public use in changing the alignment of a public way, in said city, under the authority of R. S., Chap. 27, Sec. 76, and, after hearing, the county commissioners of Penobscot County, on petition of the municipal officers determined the damages in the sum of $33,976.68, ordering the city to pay that sum to the appellants.

The latter, considering themselves aggrieved by the estimate of damages of the county commissioners took an appeal to the superior court, which resulted in a verdict for appellants in the same amount as determined by the county commissioners, and the case is argued here on a motion for new trial in the usual form, and "because the damages are entirely inadequate and insufficient."

The land taken is a corner lot in the wholesale section of the city of Bangor at the end of the concrete bridge across Kenduskeag stream, on the westerly side of Broad Street, bounded southerly by Independent Street, westerly by Haymarket Square and terminates in a party wall on the northerly side.

The area of the lot is 8,889 square feet, or a little more, and for structures contained a warehouse building, a two and one-half story building, used as a restaurant and a metal workers shop, a blacksmith's shop and a party wall of brick between this lot and the lot adjoining on the north.

Pickering Square is at such elevation above Broad Street that the entrance to buildings on this lot at the margin of the square

would be on the second floor of such buildings continued to Broad Street.

Such was the construction of the warehouse building, enhancing its value, as claimed, for use in receiving, storing, and discharging heavy merchandise.

The City contends that the finding of the jury furnishes the just compensation to be found as damages for such taking of private property; the appellants that the damages found by the jury are so inadequate as to justify the awarding of a new trial, and particularly because the sum found by the jury is exactly equal to that previously estimated by the county commissioners.

Thus we are confronted with a question of jurisdiction, whether or not the appellants are entitled to a hearing on their motion for a new trial.

The statute already cited, which authorizes the taking of land to secure a change of alignment of a highway and which directs the procedure provides that parties aggrieved by the estimate of damages of the county commissioners "shall have like remedy as provided by statute for appraisal of damages for land taken by towns for highway purposes."

Appeal properly lays the case before the superior court, and one method of trial there is by jury.

Error may creep into a case in a trial court, and, as broadly stated in somewhat analogous proceedings in *Carvill* v. *Carvill*, 73 Me., 136, 139, "Whenever a jury trial is had, there may be a motion or exceptions for the correction of errors, whether of the court or jury."

This practice has been followed in *Lenox Petitioner* v. *Knox & Lincoln R. R. Co.*, 62 Me., 322; *Wilson* v. *So. Portland*, 106 Me., 146, 76 A., 284; *Chase* v. *Portland*, 86 Me., 367, 29 A., 1104; *Sherburne* v. *Inhabitants of Sanford*, 113 Me., 66, 92 A., 997; *Simoneau* v. *Livermore Falls*, 131 Me., 165, 159 A., 853.

Appellants from estimate of damages will be heard when the estimate is attacked as excessive or inadequate. *Leavitt* v. *Dow*, 105 Me., 50, 72 A., 735; *Conroy* v. *Reid*, 132 Me., 162, 166, 168 A., 215.

As to the coincidence of amounts found as damages, it is too much to say that the amount found by the jury was arrived at in-

dependently of and with no knowledge of the amount estimated by the County Commissioners.

But what is there censurable about the action of the jurors, if after studying and giving due weight to all pertinent evidence, each juror found the damages suffered in the very amount of the commissioners' estimate?

Local experts testified as to the value of the property taken.

In their estimates of value of the land the range was from $1.50 to $4.00 a square foot; of the land, with structures thereon, from $26,386.77 to $53,000.00.

Much testimony was given as to reproduction cost, less depreciation.

The jury had the testimony of apparently disinterested men on what the property would have earned annually, if cleared and devoted to the business of a filling station, in supplying the needs of operators of motor vehicles. They heard testimony of the relation between annual rental value and market value. They inspected the lot; studied its location.

It was their duty to report their opinion of the value of the property as of the last week of April in 1934.

They must agree, if agreement can be reached, on what is just compensation for the property, taken on that day.

Property has been taken for public use in the flood of good times.

It was taken from the Cassidy estate during the ebb tide of a most distressing financial depression.

It was for the jury to determine the amount of money the city must pay in reimbursement.

That their conclusion was identical with that of the commissioners of the county is not of itself enough to justify setting their finding aside. No improper motive on their part is suggested. It may be that they severally settled upon the amount appealed from, as the deliberate decision of each. That is all the law requires of jurors.

Land owners have, heretofore complained of estimates of damages for property taken. They may complain in the future. "What the owner is entitled to is the value of the property taken, and that means what it fairly may be believed that a purchaser in fair

market conditions would have given for it in fact." *City of New York* v. *Sage*, 239 U. S., 57.

It was the duty of the jury to find the value of the property taken, as of April 26, 1934.

To find less would be to deprive the owners of property without just compensation.

To find more, because of prevailing low prices, would be to capitalize a hope.

The verdict in the estimate of men of the vicinity is just compensation. We can not say it is so much less as to require a new trial.

*Motion denied.*

DUNN, J.  I dissent. The State is constitutionally prohibited from taking private property, for its own needs, except upon due compensation.

In the instant case, the award of damages is inadequate, to the extent of being against the weight of the evidence.