STATE OF MAINE
WALDO, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-99-011

*DHM-WAL- 6/12/2000*

ANN MARIE WALLACE,

Plaintiff

v.

WILMA MOORE,

Defendant

DECISION AND ORDER

STATE OF MAINE
Waldo County Superior Court

JUN 12 2000

REC'D AND FILED
Joyce M. Page, Clerk

This matter is before the court on defendant Wilma Moore's motion for summary judgment on plaintiff Ann Marie Wallace's complaint.[1]

I.     Facts and Procedural History

In the spring of 1998, defendant Wilma Moore was approached by Dennis Doherty about the possibility of logging a parcel of her land located in Belfast, Maine. Def's SMF ¶ 13, undisputed by Pl's SMF. Moore gave Doherty permission to harvest timber on her property, without any limitations as to where on the parcel he could cut. Def's SMF ¶ 15, undisputed by Pl's SMF. Pursuant to their agreement, Doherty was responsible for determining the boundary between Moore's property and that of an abutting landowner, plaintiff Anne Marie Wallace. Def's SMF ¶ 16; Pl's SMF ¶ 2. Pursuant to this agreement, Doherty began harvesting the timber from Moore's land.[2] In the fall of 1998, Wallace had a survey of her property done. Def's SMF ¶

---

[1] Wallace has also filed a motion for summary judgment. The briefing on this motion has been completed, however, it has not been argued. The court has reviewed the filings on this motion. The court notes that this judgment on Moore's motion for summary judgment fully decides the issues raised in Wallace's motion for summary judgment.

[2] It appears that Doherty hired Kenneth Merrifield and Elliott Mitchell to do the actual harvesting of the timber. Def's SMF ¶ 23, undisputed by Pl's SMF.

28, undisputed by Pl's SMF. As a result of this survey, it was discovered that approximately four acres of Wallace's land had been cut by Doherty. Def's SMF ¶ 29, 30; undisputed by Pl's SMF.

Wallace filed a two count complaint against Moore as a result of these events. In count one, brought pursuant to 14 M.R.S.A. §§ 7552 and 7552-A (Supp. 1999), she alleges that Moore or her agents/employees entered onto her land and cut down and took timber without her consent. Wallace claims that the cutting authorized by the Moore involved more than 10 acres and that Moore failed to clearly mark the common boundary between their properties as required by law. Count two of the complaint alleges a common law claim for timber trespass based on the same facts. Moore has filed a motion for summary judgment on Wallace's complaint.[3]

## II.     Discussion

### A.     Count 1 - 14 M.R.S.A. §§ 7552, 7552-A (Supp. 1999)

Count one of Wallace's complaint is brought pursuant to two statutory provisions, 14 M.R.S.A. §§ 7552 and 7552-A. The damages available under each of these provisions are non-exclusive, meaning that a party can recover under both provisions in one action.[4] In regards to Wallace's claim under section 7552-A, that provision is only applicable in cases where a landowner has authorized the cutting

---

[3] After Moore answered Wallace's complaint, she filed a third-party complaint against various individuals, including Doherty. Several other claims have been raised in this lawsuit, however, they are not relevant to the motion currently before the court.

[4] *See* 14 M.R.S.A. § 7552-A (Supp. 1999) ("These damages are in addition to any damages to which the owner of the abutting land may be entitled under section 7552.").

2

of timber or wood in an area of ten or more acres. Moore's statement of material facts contains the following factual allegations:

> 10. To the east of Ms. Wallace's generally rectangular parcel is a 62-acre parcel of similar size and character that was, at all times relevant to this lawsuit, owned by Defendant Wilma Moore.

> 15. Ms. Moore agreed to permit Mr. Doherty to cut timber on her parcel without any limitations as to where on the parcel he could cut.

Def's SMF ¶¶ 10, 15. These facts are undisputed by Wallace. Thus, there is no genuine issue of material fact with regard to the fact that Moore authorized the cutting of timber in an area in excess of ten acres, thereby making section 7552-A applicable to the instant case. Section 7552-A states:

> *Any person who authorizes the cutting of timber or wood on the person's own property*, when the cutting involves an area of 10 or more acres, *shall clearly mark any property lines* that are within 200 feet of the area to be cut. *If any such person fails to clearly mark such property lines* and if the person or persons who are authorized to cut then cut timber or wood on abutting land without the authorization of the owner of that land, *the person who failed to mark the person's property lines is liable in a civil action*, in double damages, to that owner of the abutting land.

(emphasis added). Moore argues that she is entitled to summary judgment on this claim because when she authorized Doherty to do the cutting, she delegated to him the responsibility for marking the property lines. Wallace argues that section 7552-A requires the property owner to mark the property lines and that this duty cannot be delegated.

Section 7552-A specifically states that the person "authoriz[ing] the cutting . . . shall clearly mark any property lines . . . ." Thus, the plain language of the statute imposes on the landowner the duty of marking the property lines. If the Legislature

3

had intended the landowner to be able to delegate that duty, they could have easily stated that the person authorizing the cutting *or his agent* must clearly mark the boundaries. In fact, the Legislature has made this distinction in several other statutes.[5] The court also notes that in the only two Law Court cases interpreting section 7552-A, the landowners were ordered to pay damages under this section as a result of their failure to clearly mark the boundary line between their property and that of the abutting property owners. *See Fraser v. Barton,* 628 A.2d 146 (Me. 1993); *Leadbetter v. Morse,* 510 A.2d 524 (Me. 1986). In neither case was the person who cut the timber held liable under this section for failure to clearly mark a boundary.

The plain language of section 7552-A imposes on landowners a duty to "clearly mark any property lines that are within 200 feet of the area to be cut" if that area involves 10 or more acres of land. In order to obtain summary judgment on this claim in count one, Moore needed show that there is no genuine issue of material fact that she clearly marked the boundaries, yet, review of her statement of material facts reveals no such allegation. In fact, Moore alleges that Doherty represented to her "that he would determine the boundary between her land and the Wallace parcel and assumed all responsibility for making such determination." Def's SMF ¶ 16. Furthermore, in Wallace's statement of material facts, it is alleged that Moore "left it up to Dennis Doherty to determine the common boundary line

---

[5] *See e.g.,* 7 M.R.S.A. § 642 (1989) ("All containers of shell eggs deposited in cold storage shall be marked plainly with date of receipt and date of withdrawal by the officer, or his agents, in charge of the cold storage plant."); 12 M.R.S.A. § 7857(3) (1994) ("A person is guilty of unlawfully operating a vehicle on a snowmobile trail, . . . unless that use has been authorized by the landowner or his agent."); 14 M.R.S.A. § 6022(1) (1980) ("A landlord or his agent shall provide a written receipt, as required in subsection 2, for each rental payment and each security deposit payment received partially or fully in cash from any tenant.").

4

between her and Plaintiff's lots." Pl's SMF ¶ 2. Thus, it is undisputed that Moore did not clearly mark the property lines as required by section 7552-A. Therefore, her motion for summary judgment on this claim must be denied. Moreover, because there is no genuine issue of material fact with regard to the fact that Moore did not mark the property lines as required by section 7552-A, this court, pursuant to M.R. Civ. P. 56(c), is granting Wallace summary judgment on this claim. Therefore, she is entitled to recover double damages from Moore. Although there does not appear to be a dispute as to the value of the trees cut on Wallace's property, *see* Def's SMF ¶ 31 (stating that the fair market value of the trees was $2,638.69); undisputed by Pl's SMF; the court believes the issue of damages should be heard.

Title 14, section 7552(2) of the Maine Code states in relevant part:

> **2. Prohibitions.** Without permission of the owner a person may not:
> A. Cut down, destroy, damage or carry away any forest product, ornamental or fruit tree, agricultural product, stones, gravel, ore, goods or property of any kind from land not that person's own; . . .

Moore argues that she is not liable for damages under this section because Doherty was a non-agent independent contractor. In support of this argument, Moore relies on *Bonk v. McPherson*, 605 A.2d 74, 78-79 (Me. 1992). The Law Court held in *Bonk* that:

> While an independent contractor can be considered an agent in some circumstances, if the contractor has contracted to accomplish physical results not under the supervision of the one who has employed [him] to produce the results, then the contractor is a nonagent contractor. As a general rule, there is no vicarious liability upon the employer of an independent contractor. Since an agent who is not a servant is not subject to any rights of control by his employer over the details of his

5

> physical conduct, the responsibility ordinarily rests upon the agent alone, and the principal is not liable for the torts he may commit.

*Id.* at 78-79. The court went on to comment that in some circumstances, a party can still be held liable for the actions of his independent contractor "if the trespass was authorized as part of the contract, or was the natural result of the work contracted to be done, . . . or the trespass was somehow directed or part of a common purpose, . . . or the trespass was ratified." *Id.* at 79 (citations omitted).

First, regarding landowner liability when the person hired is an independent contractor, nothing in Wallace's statement of material facts raises a genuine issue of material fact with regard to whether Moore authorized the trespass as part of her contract with Doherty, whether the trespass was the "natural result" of the work contracted to be done, whether the trespass was somehow directed or part of a common purpose, or whether she ratified the trespass. Thus, the critical issue in this case is the legal relationship between Doherty and Moore. If Wallace has raised a genuine issue of material fact in her Rule 7(d) statement as to whether Doherty was, in fact, Moore's agent, rather than her independent contractor, then summary judgment would be inappropriate.

The Law Court has described agency as a "fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Bonk*, 605 A.2d at 78. "It is the element of continuous subjection to the will of the principal which distinguishes the agent from other fiduciaries. Consent and control are required elements of an agency relationship." *Page v. Boone's Transport, Ltd.*,

6

1998 ME 105, ¶ 5, 710 A.2d 256, 257. Therefore, in order for Wallace to raise a genuine issue of material fact with regard to whether Doherty was Moore's agent, she needed to offer some evidence that Moore consented to Doherty acting on her behalf and that Doherty was subject to her control. While it is undisputed that Moore consented to Doherty's timber cutting on her property, Wallace has offered no evidence in her statement of material facts that Doherty was subject to Moore's control while he was cutting the timber. In fact, the only allegation in Wallace's statement of material facts which addresses the legal relationship between Doherty and Moore asserts that "Kenneth Merrifield, a wood cutter employed by Dennis Doherty to cut trees on Defendant Wilma Moore's property, considered Doherty to be Moore's agent." Pl's SMF ¶ 1 (citing Merrifield Depo. at 6, 42, 56-57). This statement does nothing more than offer this court Merrifield's opinion as to the legal relationship between Doherty and Moore. Such legal conclusions do not generate a genuine issue of material fact. *See Diversified Foods, Inc. v. First Nat'l Bank of Boston*, 605 A.2d 609, 612 (Me. 1992) (in ruling on summary judgment motion, court properly excluded from consideration "legal arguments and conclusions"); *Kitchen v. City of Calais*, 666 A.2d 77, 79 (Me. 1995) (legal conclusions do not generate a genuine issue of material fact).

As noted above, control is a "required element" of an agency relationship. Wallace's failure to include any information in her statement of material facts showing that Doherty was subject to Moore's control during the logging operation means that she has not raised a genuine issue of material fact with regard to

7

whether Doherty was Moore's agent. Therefore, Moore's motion for summary judgment on this claim under count one of the complaint is granted.

## B.    Count 2 - Common Law Trespass

Wallace alleges in count two of her complaint that Moore or her agents entered onto her property without her consent and cut down and removed trees, thereby causing damage and destruction to her property. Complaint Count II ¶¶ 1, 2. A trespasser is defined as "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." *Collomy v. School Admin. Dist. No. 55*, 1998 ME 79, ¶ 6, 710 A.2d 893, 895 (quoting *Restatement (Second) of Torts* § 329 (1965)); *see also State v. Tullo*, 366 A.2d 843, 847 (Me. 1976) ("Every unauthorized entry on the land of another is a trespass and anyone who makes such an entry is a trespasser."). A "plaintiff is entitled to recover whatever damage she suffered by reason of [a] defendant['s] unlawful entry on her premises." *Cosgrove v. Fogg*, 152 Me. 464, 467, 54 A.2d 538, 540 (1947). There are no facts in Wallace's Rule 7(d) statement which raise a genuine issue of material fact with regard to whether Moore herself entered upon Wallace's land without authorization. Thus, the issue is whether Moore can be held liable for Doherty's trespass onto Wallace's land.

"Under Maine law, '[i]t is well-settled that one who directs or authorizes a trespass is equally and jointly liable with him who commits it . . . .'" *Martin v. Brown*, 650 A.2d 937, 939 (Me. 1994) (quoting *Chase v. Cochran*, 102 Me. 431, 437, 67 A. 320, 322 (1907)). "Causing someone else to trespass is a trespass." *Id*. "To render

8

one man liable in trespass for the acts of others, it must appear either that they acted in concert, or that the act of the individual sought to be charged, ordinarily and naturally produced the acts of the others." *State v. Smith*, 78 Me. 260, 264, 4 A. 412, 413 (1886). In these circumstances, one may be held liable for trespass "on the principle that he who does an act by another does it himself; it may not be the work of his hands, yet it is the result of his will and his purpose which are the efficient cause of the operations conducted by others." *Martin*, 650 A.2d at 939 (quoting *Smith*, 78 Me. at 265, 4 A. at 413). Wallace argues that Moore is liable for common law trespass because she failed to mark her boundaries as required by 14 M.R.S.A. § 7552-A. If this duty is delegable, Wallace argues that Moore negligently delegated that duty to Doherty.

Wallace has presented this court with no evidence that Moore "directed" or "authorized" Doherty's trespass onto her land. Likewise, there is no evidence that Doherty and Moore "acted in concert" in causing the trespass. Review of the parties' statements of material facts reveals that the only action taken by Moore with regard to the tree cutting operation was to give Doherty permission to cut timber on her property. It is undisputed that, at that time, it was agreed that Doherty would be responsible for determining the location of the property lines.[6] Wallace has offered no evidence, and does not even allege, that Moore made any representations to

---

[6] *See* Def's SMF ¶¶ 15, 16 (Moore "agreed to permit Mr. Doherty to cut timber on her parcel without any limitations as to where on the parcel he could cut" and Doherty represented to Moore "that he would determine the boundary between her land and the Wallace parcel and assumed all responsibility for making such determination."); Pl's SMF ¶ 2 ("Moore left it up to Dennis Doherty to determine the common boundary line between her and Plaintiff's lots.").

9

Doherty regarding the location of her property lines. Under these circumstances, Moore cannot be held liable for Doherty's trespass because her action of giving Doherty permission to cut trees on her land did not *cause* Doherty to trespass upon Wallace's land and cut trees thereon. In other words, her act of giving Doherty permission to cut timber on her land did not "ordinarily and naturally" result in the subsequent trespass by Doherty. Therefore, Moore's motion for summary judgment on count two of the complaint is granted.

## III.  Conclusion

Therefore, for all the reasons above, the entry shall be:

Defendant's motion for summary judgment is GRANTED on plaintiff's 14 M.R.S.A. § 7552 claim in count one and on count two; Defendant's motion is DENIED as to plaintiff's 14 M.R.S.A. § 7552-A claim in count one; plaintiff is GRANTED summary judgment on that claim; matter to be set for hearing on damages.

Dated:  June 9, 2000

Donald H. Marden
Justice, Superior Court

10